UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| **GST CAPITAL PARTNERS, LLC** )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>**CATOOSA COUNTY, GEORGIA,** )<br>)<br>    Defendant. )<br>) | **Civil Action No. _____** |

# COMPLAINT

GST Capital Partners, LLC comes now, by and through undersigned counsel, and files this Complaint against Catoosa County, Georgia asserting that the County's denial of GST's applications to construct a cellular telecommunications tower violated the Telecommunications Act of 1996. In support of this Complaint, GST states as follows:

## NATURE OF ACTION

This action arises out of Defendant's unlawful denial of Plaintiff's application to construct a wireless telecommunications facility. Defendant's denial is not supported by substantial evidence contained in a written record, and the denial effectively prohibits the provision of personal wireless service in

-1-

the vicinity of the proposed facility. Accordingly, the Defendant's denial of the Plaintiff's application violates the federal Communications Act, as amended, 47 U.S.C. § 332(c)(7) (the "Communications Act" or "Act"), and Plaintiff is entitled to an order directing Defendant to grant Plaintiff's application for the proposed facility.

Plaintiff requests expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

## PARTIES

1. GST Capital Partners, LLC ("GST"), is a Delaware limited liability company with its principal place of business in Shreveport, Louisiana. GST is authorized to do business in Georgia and is registered as a foreign limited liability company with the Georgia Secretary of State.

2. Catoosa County, Georgia (the "County") is a political subdivision in the State of Georgia. Pursuant to FED. R. CIV. P. 4(j), the County may be served with process by service on its chief executive office, Zoning Administrator Mr. James Davis, Catoosa County Government, 184 Tiger Trail, Ringgold, Georgia 30736, or upon its city attorney, Clifton M. Patty, Jr., 7731 Nashville Street, Ringgold, Georgia 30736.

## JURISDICTION AND VENUE

3.  This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this action involves a federal question arising under the Telecommunications Act of 1996, specifically 47 U.S.C. § 332(c)(7) (the "TCA").

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as this is the judicial district in which the County is located and in which the property that is the subject of this action is situated.

## GENERAL FACTUAL ALLEGATIONS

### Federal Statutory Control Of Wireless Siting

5.  The Communications Act governs federal, state and local government regulation of the siting of personal wireless service facilities such as the one at issue in this case. 47 U.S.C. § 332(c)(7)(B).

6.  The Communications Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Communications Act may seek review in the federal courts, and that the courts shall hear and decide the action on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v).

### The Wireless Communications Service Industry

7.     GST constructs, owns, and manages wireless communications facilities in Georgia and elsewhere in the country. GST leases space on its facilities to national and regional wireless carriers who provide personal and advanced wireless services, as well as other telecommunications services, as those terms are defined under federal law, to end-user wireless consumers. In providing this valuable service to wireless carriers, GST is facilitating the development and deployment of advanced wireless and broadband connectivity consistent with the goals of the Communications Act. GST also leases space on its facilities to federal, state, and local first responders, law enforcement, and public safety agencies.

8.     T-Mobile provides commercial mobile radio services, personal and advanced wireless services, and other telecommunications services, as those terms are defined under federal law, in the State of Georgia, including in Catoosa County, Georgia.

9.     T-Mobile is seeking to facilitate the maintenance and development of a wireless telecommunications network in keeping with the goals of the

Communications Act. T-Mobile uses licenses issued by the FCC pursuant to 47 U.S.C. § 151 to provide wireless service in Catoosa County, Georgia.

10. Section 151 of the Communications Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide, and world- wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. §151.

11. To meet these policy goals, T-Mobile seeks to provide myriad wireless services to local businesses, public safety entities and the general public.

12. Likewise, to advance the national policies enumerated under 47 U.S.C. § 151 and repeatedly reiterated by the FCC, GST constructs towers and other wireless facilities that allow wireless carriers, such as T-Mobile, to create and maintain a network of "cell sites," each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals.

13. To provide reliable service to a user, coverage from cell sites must overlap in a grid pattern resembling a honeycomb. If GST is unable to construct a cell site within a specific geographic area, the wireless carriers it serves, such as T-Mobile, will not be able to provide service to the consumers within that area.

14. To determine where a new wireless facility is required, radio frequency ("RF") engineers use various techniques, such as sophisticated computer programs and field testing, to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also takes into account the topography of the land, the coverage boundaries of neighboring cell sites, and other factors. For a wireless network to perform, cell sites must be located, constructed and operated so that reliable service can be achieved. If there is no functioning cell site within a given area, there will be no reliable service for customers within that area, and customers who live or travel in the area will experience an unacceptable level of dropped calls and call connection failures.

15. On or about July 21, 2017, GST submitted to the County an Application for a Special Use Permit to build a new 250 foot, self-supporting cellular telecommunications tower, also known as a "wireless transmission

facility," on property owned by Judy Rogers Andrews located at Dailey Hill Road, Ringgold, Catoosa County, Georgia 30736 (the "Proposed Site"). A true and correct copy of the Application for a Special Use Permit that was submitted by GST to the County and distributed to the County's Planning Commission is attached hereto as Exhibit A.

16. On August 16, 2017, GST filed an Application for a Zoning Variance with the County's Planning Commission seeking (a) a variance from the County ordinance requiring cellular towers located in residential districts of the County (in this case, districts zoned R-1) not to exceed a height of 100 feet, and (b) a variance from the County ordinance requiring cellular towers to be located at least 1,000 feet away from the nearest residence. A true and correct copy of the Application for a Zoning Variance that was filed with the County's Planning Commission is attached hereto as Exhibit B.

17. On September 26, 2017, the County's Planning Commission met to consider GST's Application for a Special Use Permit and Application for a Zoning Variance (collectively, "Applications"). Local residents Gregory and Diane Roberts and James and Carol Thomas appeared at the meeting and spoke in opposition to the construction of the cellular tower on the Proposed Site based

on the County's height and setback requirements for cellular towers. At GST's request, the Applications were tabled so that GST could investigate if the tower height on the Proposed Site could be lowered from 250 feet. A true and correct copy of the minutes from the September 26, 2017 County's Planning Commission meeting are attached hereto as Exhibit C.

18. On October 26, 2017, GST sent the County's Planning Commission plans for a 160 foot, self-supporting cellular tower and requested that the matter be heard at the November 28, 2017 meeting of the County's Planning Commission. A true and correct copy of the materials GST sent to the County's Planning Commission are attached hereto as Exhibit D.

19. On November 28, 2017, the County's Planning Commission took up GST's Applications to construct the 160 foot tower. Local residents Barbara Lawrence, James Thomas, James Slatten, David Gregory, and Lance Steele appeared at the meeting and spoke in opposition to the construction of the cellular tower due to the tower not meeting the County's 1,000 foot setback requirement. Some of the residents also based their objections on aesthetics and health concerns. The residents, however, presented no evidence to support their generalized, subjective, and unsubstantiated concerns. Nevertheless, the

County's Planning Commission voted to deny the Applications based on the residents' concerns. A true and correct copy of the minutes from the November 28, 2017 County's Planning Commission meeting are attached hereto as Exhibit E.

20. GST appealed the decision of the County's Planning Commission to the County's Board of Commissioners. On December 20, 2017, the County's Board of Commissioners voted unanimously to uphold the decision of the County's Planning Commission. A true and correct copy of the County's Board of Commissioners' December 20, 2017 letter is attached hereto as Exhibit F.

21. GST presented evidence to the County that the Proposed Site is on a plat of open farm land surrounded by tall trees. *See* Exhibit A. The 160 foot tower would be only partially visible from certain locations surrounding the Proposed Site. *See* Exhibit A. Furthermore, the Proposed Site is located adjacent to an existing water tower, so there is no impact to the surrounding property owners' views or aesthetics. *See* Exhibit A.

22. GST also presented evidence to the County that the Proposed Site was necessary for T-Mobile, the tenant of the tower at the Proposed Site, to be able to provide telecommunications services in the area. Without construction of

the proposed cellular tower on the Proposed Site, T-Mobile will be unable to provide telecommunications services in the area because there are not any existing sites or colocation sites available. GST submitted a map showing the location within which the tower must be constructed for T-Mobile to be able to remedy the gap in coverage. This same map also shows 1,000 foot diameter circles at various locations within the coverage gap area. There is no area within the coverage gap area where the excessive and unreasonably burdensome 1,000 foot County setback requirement can be met. In fact, the Proposed Site provides the maximum possible setbacks from residences located within the coverage gap area, with the nearest residence located 803 feet away from the tower. In other areas of the County other than residential areas the setback requirement is only the height of the tower rather than 1,000 feet. Moreover, GST proposed a longer access road than is required in an effort to get further away from residences, despite the significant additional expense to GST. A true and correct copy of the map submitted to the County's Planning Commission is attached hereto as Exhibit G.

23. In addition, GST's Application for a Special Use Permit established that a gap in service and coverage exists for the area surrounding the Proposed

Site.  *See* Exhibit B.  GST included in its Application for a Special Use Permit two very detailed coverage maps, one showing the clear lack of service and coverage in the area surrounding the Proposed Site without the proposed cell tower and another showing the significant increase in service and coverage with the proposed cell tower.  *See* Exhibit B.

24. Accordingly, and as discussed below, the County's denial of GST's Applications was in violation of Section 704 of the Telecommunications Act of 1996, codified at 47 U.S.C. § 332(c)(7), for four separate reasons:  (1) the County's denial had the effect of prohibiting the provision of personal wireless services; (2) the County's denial was not supported by substantial evidence; (3) the County's denial was based at least in part on the County's unlawful consideration of environmental and health effects of radio frequency emissions; and (4) the County's ordinance constitutes an unlawful barrier to entry under 47 U.S.C. § 253.

> **COUNT I:  The County's denial effectively prohibited the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).**

25. Paragraphs 1 through 24 are incorporated herein by this reference.

-11-

26. The TCA, 47 U.S.C. § 332(c)(7)(B)(i), provides as follows: "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof-- . . . (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

27. For a denial of an application to amount to an effective prohibition, there must be (a) a showing of a significant gap in service coverage, and (b) the proposed tower is the least intrusive means of closing that gap. The denial of a single application can amount to an effective prohibition of wireless services and constitute a violation of the TCA.

28. A "significant gap in service coverage" refers only to a carrier's own service and not that of any other carrier. Thus, GST need only demonstrate that a gap exists in its tenant T-Mobile's coverage in the area surrounding the Proposed Site. GST does not need to show that a complete coverage gap existed for all wireless carriers in that area.

29. As outlined in detail above, GST demonstrated to the County that there was a significant gap in T-Mobile's coverage for the area surrounding the Proposed Site. GST presented coverage maps and other data to the County that

clearly demonstrated that a gap in coverage exists and that the gap is significant. No one presented any evidence to the County to the contrary. Thus, the denial of GST's Applications prevented T-Mobile from filling a significant gap in its service coverage.

30. GST also clearly demonstrated to the County that it had considered the feasibility of alternative locations but none of those locations allowed T-Mobile to adequately satisfy its coverage needs, close its demonstrated service gap, and meet the County's excessive and unreasonably burdensome setback requirements. GST and T-Mobile made numerous good-faith efforts to identify and investigate alternative sites that may be less intrusive, including alternatives for colocating on other existing towers. Therefore, the evidence presented by GST was sufficient to make the requisite showing as to the intrusiveness or necessity of its proposed means of closing T-Mobile's service gap.

31. Based on the above, the County's denial of GST's Applications had "the effect of prohibiting the provision of personal wireless services," in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

32.     WHEREFORE, GST requests that this Court overturn the County's denial of GST's Applications and issue an injunction specifically directing the County's Board of Commissioners to approve GST's Applications.

**COUNT II:  The County's denial was not supported by substantial evidence as required by 47 U.S.C. § 332(c)(7)(B)(iii).**

33.     Paragraphs 1 through 32 are incorporated herein by this reference.

34.     The TCA, 47 U.S.C. § 332(c)(7)(B)(iii), provides as follows:  "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities **shall** be in writing and supported by **substantial evidence** contained in a written record." (Emphasis added.)

35.     The inquiry to be made by this Court is whether the County's decision is authorized by applicable local regulations and supported by "substantial evidence."  However, if the terms of a local zoning ordinance allow a zoning board to deny a permit based on less than substantial evidence, or no evidence at all, and a permit is denied on that basis, the record would lack substantial evidence to justify the decision.

36. The County's Planning Commission's meeting minutes from the September and November 2017 meetings demonstrate that the County's denial was not supported by substantial evidence; in fact, the County's denial was not supported by any evidence at all.

37. The citizens in opposition to GST's Applications presented only generalized complaints that amounted to nothing more than "not in my backyard." Such complaints are insufficient---substantial evidence must be substantiated. General concerns from a few citizens that the tower might be ugly or that a citizen would not want the tower in his backyard are not sufficient.

38. GST demonstrated to the County that its tenant, T-Mobile, has an existing gap in coverage in the area surrounding the Proposed Site. In addition, GST demonstrated to the County that T-Mobile had considered several alternative locations, none of which served to provide the coverage T-Mobile needs to close its service gap.

39. The County, through the Planning Commission and Board of Commissioners, relied only on unsubstantiated, unsupported general concerns and allegations from the citizens in its denial of GST's Applications. Thus, the

County's denial violated 47 U.S.C. § 332(c)(7)(B)(iii) because it was not supported by substantial evidence.

40. WHEREFORE, GST requests that this Court overturn the County's denial of GST's Applications and issue an injunction specifically directing the County's Board of Commissioners to approve GST's Application.

**COUNT III:  The County's denial violated 47 U.S.C. § 332(c)(7)(B)(iv) because the County unlawfully based its denial at least in part on alleged negative effects of radio frequency emissions.**

41. Paragraphs 1 through 40 are incorporated herein by this reference.

42. The TCA, 47 U.S.C. § 332(c)(7)(B)(iv) states:  "No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."

43. GST demonstrated that the proposed cell tower complied with the FCC's regulations concerning radio frequency emissions.

44. Health concerns expressed by residents cannot constitute substantial evidence.  If record evidence shows that health concerns undoubtedly played a role in both the community opposition faced during the application process as

-16-

well as the County's decision to deny GST's Applications, then the County's decision is a direct violation of the TCA.  Even if the perceived health risk was not the main reason for denying GST's Applications, the County's denial was a violation of the TCA if the record reflects that it was a significant reason.

45.　　The County not only considered the alleged ill effects of the cell tower's radio frequency emissions but also based its denial of GST's Applications in part on the alleged health risks, in direct violation of the TCA, 47 U.S.C. § 332(c)(7)(B)(iv).

46.　　WHEREFORE, GST requests that this Court overturn the County's denial of GST's Applications and issue an injunction specifically directing the County's Board of Commissioners to approve GST's Applications.

**COUNT IV:  The County's Ordinance constitutes an unlawful barrier to entry under the Telecommunications Act.**

47.　　Paragraphs 1 through 46 are incorporated by this reference.

48.　　In 47 U.S.C. § 253, the TCA states that no state of local statute or regulation may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications services and prohibits

local governments from enacting or imposing requirements that are not necessary to protect the public safety or welfare.

49. By imposing certain conditions upon GST in the County's Wireless Telecommunications Facilities Ordinance (the "Ordinance") including, but not limited to, (a) the requirement that a tower located in a Residential District may not exceed 100 feet in height (*see* Section 5.04.06(A)(1) of the Ordinance), and (b) the requirement that any cellular tower located in an area zoned as a Residential District be located at least 1,000 feet from any residence (*see* Section 5.04.08(L) of the Ordinance), the County is imposing unreasonable requirements that prohibit GST's tenant, T-Mobile, from providing telecommunications service in violation of Section 253 of the TCA.

50. Accordingly, the County's Ordinance, on its face or as applied to GST with respect to the Applications, constitutes an unlawful barrier to entry, and should be declared null and void.

51. WHEREFORE, GST requests that this Court declare that the County's Ordinance constitutes an unlawful barrier to entry and is thus null and void, and overturn the County's denial of GST's Applications and issue an

injunction specifically directing the County's Board of Commissioners to approve GST's Applications.

## DEMAND FOR JUDGMENT

WHEREFORE, GST prays for judgment against Catoosa County, Georgia as follows:

(1) That the Court conduct an expedited review of the matters herein pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

(2) That the Court overturn the County's Board of Commissioners' denial of GST's Applications as unlawful, unconstitutional, and null and void;

(3) That the Court enter an injunction directing the County's Board of Commissioners to approve GST's Applications; and

(4) That the Court grant any other relief that it deems just and proper.

Respectfully submitted this 19th day of January, 2018.

**GST CAPITAL PARTNERS, LLC**

/s/ Scott E. Taylor
Scott E. Taylor
Georgia Bar No. 785596
Rebecca Lunceford Kolb
Georgia Bar No. 456020
ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, Georgia 30363
Tel.: (404) 873-8500
Fax: (404) 873-8501
scott.taylor@agg.com
rebecca.kolb@agg.com

-   And   -

Warren Ken Rogers
(To be admitted *pro hac vice*)
Lauren Lawhorn
(To be admitted *pro hac vice*)
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
190 East Capitol Street
Jackson, MS  39201
Tel.: (601) 960-6876
Fax: (601) 960-6902
krogers@brunini.com
llawhorn@brunini.com

Attorneys for Plaintiff GST Capital Partners, LLC

11749398v1